IN THE UNITED STATES DISTRICT COURT
FOR THE NORTH DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MELDRIN COLLINS, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| ATLAS ROOFING | ) | |
| CORPORATION OF MISSISSIPPI | ) | |
| | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Mr. Meldrin Collins, (hereinafter "Mr. Collins" or "Plaintiff") files this complaint against Defendant seeking redress for failure to promote pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

## INTRODUCTION

Mr. Collins, an African American male, was subject to discrimination in the terms and conditions of his employment when his supervisors repeatedly denied him promotional opportunities that he was qualified to perform.  Primed with 24 years of professional roofing experience, personnel management, innovative

leadership and product development, company awards, and a commitment to

teamwork, Mr. Collins has dedicated his professional career to Atlas.  In his 21-

year tenure with Atlas, Mr. Collins has witnessed the widespread implementation

of discriminatory hiring practices, including the hiring of less qualified white

males with compromising work histories over similarly qualified or better qualified

black male applicants.  Atlas has also promulgated and enforced a "no-posting"

policy for vice president and president positions, denying Mr. Collins the right to

participate in vacant executive positions altogether.  Mr. Collins seeks

compensatory damages, punitive damages, and equitable relief to make him whole.

## **PARTIES**

### 1.

Mr. Meldrin Collins (hereinafter "Plaintiff" or "Mr. Collins") is an adult African

American man employed at Atlas as the Director of Quality and Technical

Services.  At all times relevant to this action, Mr. Collins has been and continues to

be a resident of the Northern District of Georgia.  Mr. Collins submits to the

jurisdiction of this Court.

### 2.

Atlas Roofing Corporation of Mississippi (hereinafter "Atlas") is a domestic

corporation that provides commercial and residential roofing products and services

to its customers. Atlas has its headquarters in Meridian, Mississippi, but it also operates and employs individuals in Fulton, Gwinnett, Henry, and other Georgia counties. Mr. Collins was employed at Atlas' Hampton location located at 100 Pine View Drive, Hampton, Georgia 30228, which is located in Henry County. At all times relevant to this action, Atlas employed more than 500 employees. Accordingly, at all times pertinent to this action, Atlas Roofing Corporation was an 'employer' within the meaning of Title VII.

## JURISDICTION AND VENUE

3.

This action arises under laws of the United States, including Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e, et. Seq and 42 U.S.C. § 1981. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4).

4.

This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988 and 29 U.S.C. §794(a).

5.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Defendant has residence in the Northern District of Georgia,

and a substantial part of the events and omissions giving rise to the claims in this action occurred in this district.

## ADMINISTRATIVE EXHAUSTION

6.

Mr. Collins filed a charge with the Equal Employment Opportunity Commission on November 24, 2021.  Mr. Collins received a Right to Sue Letter from the Commission on December 8, 2021.  Mr. Collins exhausted his administrative remedies and files this action within the required 90 days.

## FACTS

7.

Shortly after graduating from Southern College of Technology, now Kennesaw State University in 1994 with a Bachelor of Science in Industrial Engineering, Mr. Collins began working for Atlas as a Lab Technician in June 1995.

8.

Atlas was founded in 1982 and advertises itself to be the developer of "countless innovative, quality roofing products" for over 35 years.

9.

The Atlas organizational chart includes a President, several Vice Presidents, Senior Directors, Directors, and Technician level positions, as well as various administrative support staff positions.

10.

In their 35-year history, Atlas has always had a white male president.

11.

In their 35-year history, Atlas has always had white male vice presidents with the exception of one white female VP of Human Resources several years ago.  In 2022, there are currently 11 Vice Presidents, all of whom are white males.

12.

On or about 2015, Atlas modified Policy Number 3-009 which controls the posting of vice president positions.  In relevant part, the policy states: "Positions for President and Vice Presidents will not be posted."

13.

Atlas has a "Diversity and Inclusion" policy on-the-books, but in practice, Atlas routinely promotes lesser qualified white males for positions over more qualified minority candidates.

14.

Upon information and belief, Atlas created and enforces Policy 3-009 in order to deny minoritized employees equal opportunity for executive level roles.

15.

Atlas Policy 3-009 creates manifested inequities in the hiring process when white male executives (presidents and vice presidents) "cherry-pick" who has knowledge of vice president vacancies.

16.

In practice, Atlas Policy 3-009 allows executives to hide a discriminatory application process for vice president positions; the data reveals that the applicant pools are white and male.

17.

In addition to denying Mr. Collins' an equal opportunity for vice president positions, Atlas has also repeatedly denied Mr. Collins the opportunity for plant manager positions for the last 15+ years.

18.

Atlas employees have always advanced some seemingly business appropriate

reason for his lack of promotion (i.e. lack of experience).  However, Mr. Collins

has trained white male colleagues hired after him, who were promoted over him.

19.

Atlas has similarly promoted white males with problematic, negative work

histories.

20.

Upon information and belief, Atlas has advanced these reasons to hide their

discriminatory animus of Mr. Collins.

21.

Mr. Collins has acquired over 24 years in the professional roofing industry, with 21

of those years with Atlas.

22.

As a Lab Technician, Mr. Collins performed the following duties:

1) Conducted daily testing of Raw Materials, In-process, and Finished Products

2) Input and analyzed Quality Data providing feedback to manufacturing

3) Tested and reported for Plant Wastewater

4) Tested and maintained Plant Boilers and Cooling Tower

23.

Within his first two years of employment, Mr. Collins was promoted to the role of

Senior Lab Technician in 1997.

24.

As a Senior Lab Technician, Mr. Collins was responsible for 1. Training new lab

technicians 2. Assisting Research, Product and Development 3. Process

Improvement and 4. Claims Processing.

25.

In 1997, Atlas was rated poorest shingle, according to Consumer Reports ratings.

26.

From 1998-2000, Mr. Collins was employed by GAF in Monroe, Georgia as a

Quality Supervisor where he learned the commercial side of roofing.

27.

During his tenure with GAF, Mr. Collins was relocated to Savannah, Georgia and

promoted to Quality and Environmental Manager.  He received training in

leadership, root cause analysis, DOE, and supervision of personnel.

28.

While at GAF, Mr. Collins was recruited to return to Atlanta by Eric Glowka, a

then-Atlas employee.

29.

Mr. Glowka was impressed with Mr. Collins and asked Mr. Collins to return to

Atlas Roofing Corporation as Quality Manager in Hampton, Georgia.

30.

In 2001, Mr. Collins accepted the offer from Mr. Glowka and returned to Atlas as a

Quality Manager with Environmental and Still Yard responsibilities.

31.

In 2001, Atlas had both management and compliance issues, including a lack of

reporting, routine fires in the oxidation process, frequent oil spills, and poor

employee morale.

32.

Mr. Collins noted that daily, monthly, and annual reports were not completed

routinely.

33.

In addition, Mr. Collins noted that Atlas was facing multiple fines and violations.

34.

For over fifteen years, Mr. Collins has regularly applied for promotional opportunities with Atlas.  Mr. Collins' applications are repeatedly rejected, and Atlas has selected white male candidates to fulfill each role nearly 100% of the time.

35.

In 2002, Mr. Collins applied for the Plant Manager position in Hampton, but he was not selected.

36.

Instead, Dale Rushing, a white male, was selected for the role.

37.

Between 2003 and 2005, Mr. Collins worked closely with Mr. Rushing and would fill in as Plant Manager when Mr. Rushing traveled for extended periods.

38.

Atlas' arguments that Mr. Collins' lacked experience and qualifications are rebutted by its actions—entrusting Mr. Collins to fulfill the role for over 15 years.

39.

Mr. Collins was left in charge of the plant in Mr. Rushing's absence while still responsible for Quality, Still Yard, and Environmental.

40.

In 2006, Mr. Collins applied for the Meridian Plant Manger's position, but he did not get the position.

41.

Mr. Roger Myrick, a white male was selected for the role.

42.

Mr. Collins worked to reduce weight on laminates by lowering filler content with members of his team.

43.

Mr. Collins' contributions led to materials and trucking costs savings.

44.

In 2007, Mr. Collins applied for the Hampton Plant Manger's position, but he did not get the position.

45.

Mr. Dustin Davidson, a white male was selected for the role.

46.

 Throughout his tenure, Atlas has evaluated Mr. Collins' employment performance as "meets" or "exceeds" expectations.

47.

Mr. Collins has never received any "write-ups" during his employment with Atlas.

48.

On or about January 2007, Mr. Dustin Davidson, a white male, was hired as Operations Manager, a newly created position.

49.

Mr. Davidson had only been with the company for nine months at the time of his promotion.

50.

In Mr. Collins' tenure, the Atlas Roofing Corporation has never had the Operations Manager's position.

51.

Upon information and belief, Atlas creates promotional positions for white employees, but does not provide the same opportunities to black employees.

52.

Mr. Collins has been an integral part of the Atlas Team.

53.

In 2010, Mr. Collins was an integral member in the design and implementation of the HP shingle and an integral part of the quality start up procedure.

54.

Thereafter, Mr. Collins led the efforts to develop and build a Tech Center in Hampton, Georgia.

55.

Between 2005 - 2010, the Chalet shingle was Atlas' #1 Quality Issue.  Mr. Collins worked diligently to keep the issue from becoming a Class Action Lawsuit, through inspections, reports, dealing with homeowners, roofers, contractors, insurance companies and Atlas Consumer Services Department.

56.

Mr. Collins assisted in the development an outstanding shingle - 6" Exposure, 40" Length, Double Sealant and Wider Nailing Zone.

57.

Between 2010 and 2012, Mr. Collins performs Mr. Hazem's R&D Manager duties, including management of raw material vendors.

58.

On or about 2015, Atlas Roofing Corporation has sales report issues with Pinnacle HP - Humping, wet/frozen bundles, nail zone, and overhang, among other issues.

59.

Mr. Collins was an integral part of the team that helped to resolve 90% of the issues.

60.

On or about March 2018, Mr. Colins lead the process of getting the new shingle patented for Atlas Roofing Corporation - Product re-designed to 42", wider common bond, sealant re-location.

61.

On or about January 21, 2016, Mr. Collins was promoted to Director of Technical Services and Quality after being denied the promotion for three years while others with similar duties were promoted to Director.

62.

In 2017, Mr. Collins was given the President's Award for his stellar contributions to Atlas.

63.

In August 2019, Mr. Rushing leaves the company, creating a vacancy for the Vice President position.

64.

The Vice President position required 10-15 years of manufacturing experience, knowledge of continuous improvement techniques, entrepreneurship leadership ability, effective communication skills at all levels, credibility and rapport within the company, culturally sensitive change agent with demonstrated ability to conceptualize, develop, and implement effective manufacturing initiatives, self-starter, and computer skills (Word, Excel, Email, PowerPoint, Peoplesoft). The position also required a Bachelor's degree in engineering, chemistry, or business.

65.

Before submitting his application, Mr. Collins had Marla Bullard, Labor Relations Manager for Atlas review his resume.

66.

Ms. Bullard reviewed Mr. Collins resume and said, "I can't think of anyone more suited".

67.

On September 17, 2019, Mr. Collins sent his email application to Ken Farrish expressing his interest in the SUL Vice President of Manufacturing position.

68.

Mr. Collins was never given the opportunity to interview.

69.

Despite Mr. Collins experience and qualifications, he was rejected.

70.

Mike McCaig, a white male, was hired to fill the VP role in 2020.

71.

In 2019, with Mr. Collins contribution and fortitude, Atlas SM Shingle has been rated #1 shingle by IBHS and all independent audits/testing rate Atlas products as highly recommended.

72.

From 2019-2021, Mr. Collins continues to exhibit leadership in his role by: 1. Leading Quality and Technical efforts for the Shingles and Underlayments Division 2. Assisting Sales and Marketing in 3rd party vendors and products. 3.

Working with Plants on Quality and Process issues and improvements 4. Leading

Customer CARE initiatives 5. Conducting Customer Tours leading to new

contractors using Atlas products 6. Inspecting major claims that would involve 6

figure plus settlements 7.  Conduct Quality Training Program for technicians and

8. Working with engineering and operations on capacity increase projects.

73.

 In July 2021, Atlas promoted white male, Brad Parten to VP of Operations.  Upon

information and belief, Atlas, informed Mr. Parten that the company was accepting

applications for the role and invited him to apply.

74.

Dustin Davidson, a white male, was given the opportunity to interview for the VP

of Operations position in the summer of 2021.  Upon information and belief, the

president of Atlas, informed Mr. Davidson that the company was accepting

applications for the role and invited him to apply.

75.

Pursuant to Atlas Policy 3-009, Atlas intentionally did not post the position

internally or otherwise inform Mr. Collins that applications were being accepted.

76.

Mr. Collins had comparable management experience—as he often stepped in to cover the plant management role when absences arose.

77.

Mr. Collins has trained both Mr. Parten and Mr. Davidson on various quality processes and protocols.

78.

Mr. Parten had an inappropriate romantic relationship with one of his direct reports.

79.

Mr. Davidson has been previously accused of racial discrimination by multiple black reports, who alleged that he used racial epithets in his conversations with them.

80.

After settling a charge of discrimination against Mr. Davidson, he was thereafter promoted to the position of Senior Director of Operations.

81.

On or about August 2, 2021 Mr. Collins submitted his letter to Mr. Ken Farrish, President of Atlas Roofing Corporation and Bob Cipriano, VP of Human

Resources expressing his disappointment in not having the opportunity to interview for the Vice President of Operations position.

82.

On August 9, 2021, a meeting was scheduled to discuss the matter.

83.

On August 9, 2021, Mr. Collins met with Mr. Bob Cipriano, Ken Farrish and Robert Rojas.

84.

While they all engaged in light conversation regarding the Olympics, Mr. Farrish made the off-putting comment, "you are supporting woke athletes".

85.

Mr. Collins internally dismissed Mr. Farrish's comment and reiterated his concerns and position in his letter.

86.

Mr. Farrish then said, "Mel you were not going to get that position.  You don't have the experience. You haven't managed many people."

87.

Mr. Collins listed then shared his experiences and contributions of his twenty plus years with Atlas.

88.

On August 18, 2021, an e-mail announcement was made that Missy Miller, a white female, was being promoted to Senior Director of Corporate Engineering.

89.

Ms. Miller had no Project Engineering experience.

90.

Ms. Miller had no Equipment Installation experience.

91.

Ms. Miller had no Plant Engineering experience.

92.

Ms. Miller would be responsible for all engineering operations of Atlas, which included 36 plants.

93.

On August 20, 2021, Mr. Collins submitted his application to both Mr. Parten, Mr. Rojas and Mr. Bob Cipriano for the Meridian Plant Manager's position and received a thank you response from Mr. Parten.

94.

On September 3, 2021, Mr. Collins received an email from Mr. Rojas scheduling a Zoom interview for September 7, 2021.

95.

On September 7, 2021, Mr. Collins met with Mr. Rojas and had a great initial interview.

96.

On October 11, 2021, Mr. Collins was told to create a presentation for the second interview panel that covered his ideas for Safety, Quality, Maintenance, Employee Motivation, and Process Improvements.

97.

Mr. Collins presented before a panel which consisted of Brad Parten, Robert Rojas (Via Zoom), Robin Flake (Meridian HR), Doug Ishee (Meridian QC Manager), Dave Roberts (Meridian Process Manager), Aaron Morris (Meridian EHS Manager) and Dominik Koorn (Electrical Supervisor).

98.

On October 13, 2021, Mr. Rojas asked to speak with Mr. Collins regarding the type of compensation he was thinking of for the Meridian position.

99.

Mr. Collins informed Mr. Rojas that he had hoped an offer would be extended first before discussing salary ranges.

100.

Mr. Collins was told the range for a Level 17 which is the same as a Plant Manager is $111,000 low, $145,000 mid and $180,000 high.  The IIO Bonus was $16,500 and Performance Bonus $6,500.

101.

On October 21, 2021, Mr. Collins received a call from Mr. Rojas informing him that Mr. Ken was not willing to go to the high end of the salary range and the salary would likely be capped at $165,000.

102.

Although Mr. Collins was provided compensation information, he was never given a formal offer.

103.

Upon information and belief, Atlas management intentionally low-balled Mr. Collins to circumvent the formal offer process.

104.

Upon information and belief, Atlas offered Mr. Collins a lower salary than other similarly situated white employees with less experience and less credentials than him.

105.

Mr. Collins filed a charge with the Equal Employment Opportunity Commission on November 24, 2021.

106.

At all times relevant to this suit, Mr. Rojas, Mr. Parten, and Mr. Bob Cipriano were acting in their professional capacities as executives of Atlas.

## COUNT I: RACIAL DISCRIMINATION IN CONTRAVENTION OF SECTION 1981

107.

Plaintiff hereby incorporates the factual allegations in P1-106 of this Complaint.

108.

Mr. Collins is a member of a protected class as a black man.

109.

Plaintiff applied for and was qualified for the VP of Operations position in September 2019.

110.

Mr. Collins was rejected for the position, despite his qualifications.

111.

Brad Parten, a white male, was selected for the position.

112.

Mr. Collins and Brad Parten had comparable credentials, and Mr. Collins should have been given the opportunity to interview.

113.

Plaintiff was discriminated against in his terms and conditions of employment when Atlas intentionally failed to notify him of the VP vacancy in summer 2021— pursuant to Policy 3-009 because of his identification as a black male.

114.

Mr. Collins was subject to an adverse employment action when he was denied an opportunity received by white colleagues, to apply for the VP position in summer 2021.

115.

Instead, Atlas notified two white male candidates of the VP vacancy, and denied Mr. Collins the opportunity to be considered or interviewed for the position.

116.

Defendant's purported rationale for denying Mr. Collins' the VP opportunity for 'lack of experience' is pretextual as evidenced by their pattern of discriminatory promotions for white candidates without adequate credentials.

117.

Defendant's purported rationale for denying Mr. Collins' the VP opportunity for 'lack of experience' is pretextual as evidenced by their decision to hire Mr. Parten, despite inappropriate romantic relationships.

118.

Defendant's purported rationale for denying Mr. Collins' the VP opportunity for 'lack of experience' is pretextual as evidenced by their decision to promote Mr. Davidson after multiple complaints of racial discrimination.

119.

Defendant's purported rationale for denying Mr. Collins' the VP opportunity for 'lack of experience' is pretextual as evidenced by Mr. Collins' breadth of experience, expertise, and training as compared to the white employees who are routinely promoted sooner and at a higher salary than him.

120.

Mr. Parten and Mr. Davidson are similarly situated in all material respects to Mr. Collins because they are all (1) subject to the same policies regarding romantic relationships and discrimination (2) report to the same supervisor, VP of Operations and (3) have comparable work histories and experience.

121.

Plaintiff applied for and was qualified for the Meridian Plant Manager Position in August 2021.

122.

Mr. Collins was rejected for the position, despite his qualifications.

123.

Eric Plowman, a white male, was selected for the position.

124.

Unlike Mr. Collins, Mr. Plowman spent most of his career in shipping. Mr. Plowman was underqualified to perform the plant manager duties.

125.

No reasonable person, in the exercise of impartial judgment, would have chosen Mr. Plowman over Mr. Collins because, Mr. Collins has a longer tenure at plant operations and has more involvement of more facets of the operations.  Mr. Collins also has experience in Quality, Environmental, Purchasing, Process, Process Improvement, Training, Product Composition, Testing and Performance.

126.

Defendant denied Mr. Collins the same right to make and enforce employment contracts, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, as described above

and to be further proved at trial, because of his race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

127.

As a result of the unlawful actions of Defendant, Mr. Collins has suffered loss of income, emotional pain, suffering, mental anguish, and other nonpecuniary losses.

128.

Based on all the facts incorporated to support this Count, Plaintiff has demonstrated that Defendant violated Mr. Collins' Section 1981 rights by subjecting him to a discriminatory working environment.

## COUNT II: EMPLOYMENT DISCRIMINATION IN CONTRAVENTION OF TITLE VII

129.

Plaintiff hereby incorporates the factual allegations in P1-106 of this Complaint.

130.

Plaintiff was discriminated against in his terms and conditions of employment when Atlas intentionally failed to notify him of the VP vacancy in summer 2021—pursuant to Policy 3-009 because of his identification as a black male.

131.

Mr. Collins was subject to an adverse employment action when he was denied an opportunity received by white colleagues, to apply for the VP position in summer 2021.

132.

Instead, Atlas notified two white male candidates of the VP vacancy and denied Mr. Collins the opportunity to be considered or interviewed for the position.

133.

Defendant's purported rationale for denying Mr. Collins' the VP opportunity for 'lack of experience' is pretextual as evidenced by their pattern of discriminatory promotions for white candidates without adequate credentials.

134.

Defendant's purported rationale for denying Mr. Collins' the VP opportunity for 'lack of experience' is pretextual as evidenced by their decision to hire Mr. Parten, despite inappropriate romantic relationships.

135.

Defendant's purported rationale for denying Mr. Collins' the VP opportunity for 'lack of experience' is pretextual as evidenced by their decision to promote Mr. Davidson after multiple complaints of racial discrimination.

136.

Defendant's purported rationale for denying Mr. Collins' the VP opportunity for 'lack of experience' is pretextual as evidenced by Mr. Collins' breadth of experience, expertise, and training as compared to the white employees who are routinely promoted sooner and at a higher salary than him.

137.

Mr. Parten and Mr. Davidson are similarly situated in all material respects to Mr. Collins because they are all (1) subject to the same policies regarding romantic relationships and discrimination (2) report to the same supervisor, VP of Operations and (3) have comparable work histories and experience.

138.

Plaintiff applied for and was qualified for the Meridian Plant Manager Position in August 2021.

139.

Mr. Collins was rejected for the position, despite his qualifications.

140.

Unlike Mr. Collins, Mr. Plowman spent most of his career in shipping.  Mr. Plowman was underqualified to perform the plant manager duties.

141.

No reasonable person, in the exercise of impartial judgment, would have chosen Mr. Plowman over Mr. Collins because, Mr. Collins has a longer tenure at plant operations and has more involvement of more facets of the operations.  Mr. Collins also has experience in Quality, Environmental, Purchasing, Process, Process Improvement, Training, Product Composition, Testing and Performance.

### 142.

All a result of the unlawful actions of Defendant, Mr. Collins has suffered loss of income, emotional pain, suffering, mental anguish, and other nonpecuniary losses.

### 143.

Based on all the facts incorporated to support this Count, Plaintiff has demonstrated that Defendant violated Mr. Collins' Title VII rights by subjecting him to a racially discriminatory working environment.

### 144.

Based on all the facts incorporated to support this Count, Plaintiff has presented a convincing mosaic of evidence from which a jury could infer discriminatory intent.

## COUNT III
## ATTORNEY'S FEES

### 145.

Based on the facts alleged in this Complaint, Plaintiff is entitled to attorney's fees against Defendant under 42 U.S.C. § 1988(b), 42 U.S.C. § 2000e-5(k), and all applicable laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

a) That process issue and service be had on each Defendant;

b) That a jury trial be had on all issues so triable;

c) That Plaintiff be awarded all costs and other expenses in an amount to be determined at trial, including attorney's fees;

d) That Plaintiff have judgment against Defendant for punitive damages;

e) That this Court grant compensatory and equitable relief to Plaintiff; and

1) Plaintiff requests equitable relief in the form of Atlas policy changes—Plaintiff requests that Atlas be enjoined from enforcing Policy 3-009 based on its discriminatory affect on the application process for him and other black applicants

2) Plaintiff requests that Atlas be required to create and use a scoring metric system to evaluate candidates on a non-discriminatory basis based on their merits

f) That Plaintiff receives such other and further relief as this Court deems

just and proper.

DATE: March 4, 2022

Respectfully submitted,

/s/ Angelik Edmonds
Angelik Edmonds
Attorney for Mr. Meldrin Collins
GA Bar: 650757
Edmonds Law Office of Civil Rights LLC
691 John Wesley Dobbs Avenue NE
Suite V-17 Atlanta, Georgia 30312
O: 678-404-1239
F: +1 678-623-9090
E: angie@aedmondslaw.com